# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 24-CV-81305-RAR

**MATTHEW JOHN LEWIS**,

     Plaintiff,

v.

**RONALD WAITTS**, *et al.*,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint ("MTD"), [ECF No. 59], along with attached Exhibits.  Defendants move for dismissal of Plaintiff, Matthew John Lewis's *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983 for his failure to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  Plaintiff filed a Response, [ECF No. 62], and Defendants filed a Joint Reply, [ECF No. 66], along with additional attached Exhibits.  The Court has carefully and completely reviewed the parties' submissions, the record, and the governing law.  Being fully advised, it is **ORDERED AND ADJUDGED** that Defendants' MTD is **GRANTED** due to Plaintiff's failure to exhaust his administrative remedies.

## BACKGROUND

### I.    Procedural History

On October 17, 2024, Plaintiff docketed a Complaint pursuant to 42 U.S.C. § 1983, alleging various violations of federal constitutional and statutory law against ten Defendants employed by the Palm Beach County Sheriff's Office ("PBSO"): Dr. Gary Beauzile, Ronald

Waits, ARPN, Deputy Ramirez, Loraine Skinner, Deputy Muntean, Deputy Turner, Sheriff Ric L. Bradshaw, Sergeant Faircloth, Wellpath, LLC, and the PBSO. *See generally* Compl., [ECF No. 1]. The Court determined that the Complaint could proceed in part to service of process and permitted Plaintiff to either file an Amended Complaint to correct certain deficiencies in his pleading or "proceed on his facially valid claims[.]" Screening Order, [ECF No. 4], at 22.

On November 11, 2024, Wellpath Holdings, Inc., and its affiliated companies, including Wellpath, LLC—the healthcare provider of Plaintiff's facility and the employer of Defendants Dr. Beauzile, Waits, and Skinner—filed petitions under Chapter 11 of the United States Bankruptcy Code, which were jointly administered in the United States Bankruptcy Court for the Southern District of Texas. *See* Chapter 11 Voluntary Petition, *In re Wellpath Holdings, Inc.*, No. 24-90533-ARP (S.D. Tex. Nov. 11, 2024), ECF No. 1.

On December 4, 2024, Plaintiff docketed an Amended Complaint in this case pursuant to 42 U.S.C. § 1983, re-raising the same claims in his original Complaint. *See generally* Am. Compl., [ECF No. 7]. In relevant part, Plaintiff alleged that Defendants Deputy Ramirez and Loraine Skinner retaliated against him in violation of the First Amendment by threatening him for filing grievances. *See id.* at 10. He further alleged that Deputy Ramirez acted deliberately indifferent in violation of the Fourteenth Amendment by failing to protect him from inmate-on-inmate violence, *see id.* at 19, and that Dr. Gary Beauzile and Ronald Waits, ARPN, both employed by Wellpath, LLC, acted deliberately indifferent to his serious medical needs stemming from his opioid use disorder, *see id.* at 9. After screening the Amended Complaint under 28 U.S.C. § 1915A, the Court determined that Plaintiff's First Amendment and Fourteenth Amendment claims against these Defendants could proceed to service of process. *See* Order Screening Am. Compl., [ECF No. 9], at 20–21.

On May 1, 2025, the Texas Southern Bankruptcy Court entered a Confirmation Order, which Defendants say discharged all claims and causes of action against Wellpath Holdings, Inc. and its affiliated debtors, including Wellpath, LLC, and that any holders of such claims and causes of action who did not opt out of the Plan's Third Party Release became permanently enjoined from commencing or continuing any discharged claim—which Defendants contend include Plaintiff's instant constitutional claims against Dr. Beauzile, Waits, and Skinner.  *See* MTD ¶¶ 3–18; *see also* Notice of (1) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date, *In re Wellpath Holdings, Inc.*, No. 24-90533-ARP (S.D. Tex. May 9, 2025), ECF No. 2680.

On October 31, 2025, Defendants filed the instant Motion to Dismiss, contending that Plaintiff failed to exhaust his available administrative remedies through the PBSO inmate grievance system as required by 42 U.S.C. § 1997e(a), and further arguing that Plaintiff's claims against Defendants Dr. Beauzile, Waits, and Skinner are barred because Plaintiff failed to opt out of the Third-Party Release approved by the Texas Southern Bankruptcy Court under Wellpath Holdings, Inc.'s Chapter 11 Bankruptcy Plan.  *See generally* MTD.

## II.    PBSO Grievance System

The PBSO maintains an administrative remedial grievance procedure through which inmates may submit complaints regarding jail conditions, medical care, and staff-related conduct. *See generally* MTD, Ex. A., PBSO Inmate Grievance Procedures, [ECF No. 59-1] at 1[1] (providing that the purpose of the PBSO's grievance and appeal system is "to establish a method of communication for inmate complaints, when they are not able to resolve them informally with the

---

[1]  This version of the PBSO Inmate Grievance Procedures, which were last updated in 2021, are materially identical to the procedures in place when Plaintiff was first detained.  *See* Reply, Ex. A., Inmate Grievance Procedures, [ECF No. 66-1], at 1–2.

staff member who they feel their rights have been violated by").  The grievance system includes a "written response to grievances, including the reason for the decision," a "response within a prescribed reasonable time limit," "access to all inmates, with guarantees against reprisal," and "at least one level of appeal."  *Id.*

Specifically, the procedures provide that "inmate grievance forms shall be made available to all inmate housing units," and that the form "must be completed properly and filed within seven (7) days of the concern."  *Id.* at 2.  Once a grievance is submitted, staff are required to "review [the] grievance to determine if it can be resolved informally" and "forward [the] original to the grievance coordinator," who must "indicate the date received on the grievance, and issue a log number."  *Id.* at 1.  The grievance coordinator is required to "maintain a tracking log of grievances," including the inmate's name, the date submitted, the substance of the grievance, and the disposition.  *Id.*  Moreover, an investigating officer "shall provide the inmate with a response within fifteen (15) working days," and that the response "should be based upon facts [ ] which pertain specifically to the issue."  *Id.* at 2.

If an inmate is dissatisfied with the initial response, he or she "may file an appeal to the division commander within five (5) days of receipt of the response," and the division commander or designee "shall have seven (7) days to respond to the appeal."  *Id.*  If the inmate remains dissatisfied with the response of the division commander, he or she "may file an appeal to the major responsible for that division within five (5) days of receipt of the division commander's response," and the "major's final decision should be provided within seven (7) days of receipt of the appeal."  *Id.*  The procedures further state that, "[a]t any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply,

including any properly noticed extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

### III.   The Parties' Arguments

In his Response, Plaintiff does not dispute that he failed to file grievances concerning the conduct alleged against Defendants. *See generally* Resp.  Instead, Plaintiff contends that exhaustion of administrative remedies should be excused for several independent reasons: (1) he should not be required to exhaust because the "administrative process cannot provide compensation," *id.* at 2; (2) alleged retaliation and threats of violence by Defendants Skinner and Ramirez would have led an ordinary prisoner in his position to believe that the grievance process could not be safely used, *id.* at 2–3; (3) he never received an "inmate handbook" describing the grievance procedure, *id.* at 3; (4) filing grievances at his facility is generally dangerous, *id.*; and (5) grievances were frequently discarded or not processed by staff, *see id.* at 3–4.

Plaintiff separately argues that he could not have knowingly opted out of the Wellpath bankruptcy release because he lacked notice of the bankruptcy proceedings. *See id.* at 1 (arguing that he "had no possible way to know" that opting out of the Third-Party Release was "even an option" and thus cannot be "disadvantage[d] by something a reasonable person couldn't have possibly known").  In Reply, Defendants maintain that Plaintiff's Response confirms, rather than refutes, his failure to exhaust administrative remedies, and that his contentions on the unavailability of remedies are conclusory and contradicted by the record.[2]  *See generally* Reply.

---

[2] In Reply, Defendants attached seventy-three pages worth of additional grievances filed by Plaintiff to further highlight that Plaintiff did not file a required grievance pertaining to the subject claims.  *See generally* Reply, Ex. B, [ECF No. 66-2].  The Court declines to consider these attachments in its *Turner* analysis.  First, Plaintiff has not been afforded an opportunity to file a sur-reply, and—as explained below—resolution of the exhaustion issue requires the Court to evaluate Plaintiff's factual assertions only after he has received notice of the factual grounds Defendants advance for non-exhaustion.  Second, Defendants were required by Local Rule to provide all materials relevant to the MTD upon filing it, and not afterward.  *See* S.D. FLA. L.R. 7.1(c)(1) ("All materials in support of any motion, response, or reply, including

## LEGAL STANDARD

"Exhaustion is a matter in abatement and should be raised in a motion to dismiss." *Butler v. Lingold*, No. 19-CV-890, 2021 WL 808862, at *1 (M.D. Fla. Mar. 3, 2021) (citation omitted); *see also Brooks v. Warden*, 706 F. App'x 965, 968 (11th Cir. 2017) ("In this circuit, the exhaustion defense should be raised in a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)."). "Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). Indeed, "[t]here is no need for 'jury trials to resolve factual disputes over the preliminary issue of exhaustion' as the facts pertaining to exhaustion do not bear on the merits of Plaintiff's claim." *Johnson v. Raynard*, No. 23-CV-273, 2025 WL 2414638, at *2 (N.D. Fla. July 21, 2025) (quoting *Bryant*, 530 F.3d at 1376–77), *report and recommendation adopted*, 2025 WL 2411752 (N.D. Fla. Aug. 20, 2025).

## ANALYSIS

Defendants move to dismiss Plaintiff's Amended Complaint on two grounds. <u>First</u>, they argue that all of Plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust the PBSO's administrative grievance and appeal procedures before filing the instant action. *See* MTD at 7–12. <u>Second</u>, Defendants Dr. Beauzile, Waits, and Skinner argue that Plaintiff's claims against them are independently barred by the Third-Party Release contained in the Chapter 11 Bankruptcy Plan in the Texas Southern Bankruptcy Court,

---

affidavits and declarations, shall be served with the filing."). <u>Third</u>, and in any event, the Court does not find that these additional materials change its analysis, and Plaintiff has already conceded to not exhausting the claims at issue in his Response. *See generally* Resp.

from which Plaintiff failed to opt out. *See id.* at 2–6. For the reasons below, the Court concludes that Plaintiff failed to exhaust available administrative remedies as required by the PLRA and that no recognized exception applies. Because the Court resolves all claims on exhaustion grounds, it does not reach Defendants' alternative arguments concerning Plaintiff's failure to opt out of the Third-Party Release.

The PLRA forbids prisoners from bringing suits related to their prison conditions unless "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When a prison "provides a grievance procedure," a prisoner "must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Bryant*, 530 F.3d at 1373 ("We have no discretion to waive this exhaustion requirement."). The prisoner must file grievances "even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Although a prisoner "need not name any particular defendant in a grievance in order to properly exhaust his claim[,]" his or her grievance must still be sufficiently detailed to have "alert[ed] prison officials" to the specific issues raised in the prisoner's complaint. *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218–19 (11th Cir. 2010) (quoting *Jones*, 549 U.S. at 219).

The only exception to the PLRA's exhaustion requirement is when a grievance procedure is "unavailable." *Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The Supreme Court has identified three circumstances in which administrative remedies are "unavailable": "(1) when the

administrative procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) where the administrative scheme is 'so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it'; and (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross*, 578 U.S. at 643–44).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  First, the court must compare the factual allegations in the defendant's motion to dismiss with those in the plaintiff's response and, if they conflict, presume that "the plaintiff's version of the facts [are] true." *Id.*  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant*, 530 F.3d at 1373–74).  Second, if the plaintiff's version of the facts indicates that he has exhausted his remedies, the court must then "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*; *see also Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("*Whatley II*") ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits.").  The defendants "bear the burden of proving that plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082.  However, the plaintiff "has the burden to demonstrate that the administrative remedies were unavailable[.]" *Black v. Rayburn*, No. 22-10826, 2024 WL 64291, at *3 (11th Cir. Jan. 5, 2024).

### I. *Turner* Step One

The Court begins its analysis under *Turner*'s first step by summarizing the parties' positions on exhaustion.  Here, the parties do not meaningfully dispute that Plaintiff failed to

properly file the requisite inmate grievances concerning the Defendants' alleged conduct.  Overall, Defendants assert that Plaintiff "failed to properly exhaust the administrative remedies provided to him."  MTD at 12.  And among the grievances that Plaintiff apparently <u>did</u> file pertaining to medicine administration and retaliation, Plaintiff did so "in a conclusory manner" and "[did] not even name any of the[ ] Defendants in his grievances."  *Id.* (citations omitted).  Liberally construing his Response,[3] Plaintiff asserts that his failure to exhaust should be excused for five reasons.  <u>First</u>, Plaintiff maintains that pursuing administrative remedies would have been futile because the grievance system "cannot provide compensation" for the conduct he alleges.  Resp. at 2.  <u>Second</u>, Plaintiff asserts that alleged retaliation and threats of violence by Defendants Skinner and Ramirez would have caused a reasonable inmate in his position to conclude that the grievance process could not be safely invoked.  *Id.* at 2–3.  <u>Third</u>, Plaintiff states that he never received an "inmate handbook" explaining the grievance procedure.  *Id.* at 3.  <u>Fourth</u>, Plaintiff contends that the act of filing grievances at his facility generally places inmates at risk.  *Id.*  <u>Fifth</u>, Plaintiff asserts that grievances were routinely discarded or left unprocessed by jail staff.  *Id.* at 3–4.

The Court easily rejects Plaintiff's first argument: that exhaustion of his jail's administrative remedies was unnecessary because it would not result in monetary damages for his alleged injuries.  If a prison system "provides a grievance procedure for its prisoners," then the "inmate alleging harm suffered from prison conditions *must* file a grievance and exhaust the remedies available under that procedure[.]"  *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021) (emphasis added & quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)).  Inmates remain subject to this requirement even where money damages are unavailable.  *See Booth*

---

[3]  The Court must liberally construe all *pro se* pleadings.  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

*v. Churner*, 532 U.S. 731, 741 (2001) (holding that prisoners must exhaust their administrative remedies regardless of the relief they seek, such as injunctive relief or money damages, even where the latter is unavailable through the administrative grievance process).  Plaintiff's first argument is thus untenable and fails to create any factual dispute under *Turner*'s first step.

Plaintiff's remaining points present a tougher call.  He broadly avers that it is "dangerous . . . for an inmate to write any grievance" at his facility, and that inmates generally face "retributive action[,] consequences of pain, torment, humiliation, and even deception in future disciplinary action."  Resp. at 3.  Plaintiff also alleges that, "at no time ever [did he] receive[ ] an inmate handbook," and with respect to "PBSO['s] grievance system" as a whole, staff members have committed "bold face lies, misinformation, [and] false resolutions," while "often trash[ing] grievances" and "leaving no record of" them.  *Id.*  Further, Plaintiff claims to have had "countless grievances [of his own] never returned" by jail staff.[4]  *Id.*

With respect to individualized interferences with the grievance process, Plaintiff alleges that Defendants Skinner and Deputy Ramirez personally intimidated him from filing grievances. He specifically asserts that Skinner would "threaten to lie" about inmates and "take [them] off" their medication for opioid use disorder "if [they] did anything she didn't approve of," including filing grievances.  *Id.* at 2.  As for Deputy Ramirez, Plaintiff claims that Ramirez "would tell [him]

---

[4]  "To the extent that Plaintiff would argue that a lack of response to any grievance made the grievance process unavailable and thus excuses him from exhausting, the Eleventh Circuit has specifically rejected this argument."  *Amerson v. Smith*, No. 23-CV-268, 2024 WL 5465061, at *5 (M.D. Ga. Nov. 25, 2024) (citing *Garcia v. Obasi*, 21-12919, 2022 WL 669611, at *4 (11th Cir. March 7, 2022)), *report and recommendation adopted*, 2025 WL 521842 (M.D. Ga. Feb. 18, 2025).  Further, here, the PBSO's Grievance Procedures account for lack of responses, providing that an inmate can treat a staff member's failure to respond as a denial.  *See* MTD, Ex. A, PBSO Inmate Grievance Procedures at 2.  A lack of a response is therefore no basis for an inmate to give short shrift to the PBSO's rules on grievances and appeals.

he would get [him] stabbed if [he] wrote a grievance on him and would read [Plaintiff's] grievances to violent gang members trying to instigate violence." *Id.* at 3.

No doubt, these allegations are serious. Plaintiff, however, does not allege that any official or Defendant prevented him from filing a grievance, refused to accept a grievance, or threatened him in direct response to an attempted grievance concerning the conduct alleged in this case. *See generally* Resp. Nor does Plaintiff identify any specific grievance he attempted or intended to file that was thwarted by Defendant or jail staff intimidation.[5] *See generally id.* Notably, Plaintiff makes no attempt to explain why he was impeded from filing grievances against Dr. Beauzile and Waits, except for his overly broad contentions that staff's recordkeeping and grievance resolution failures rendered the process futile. *See generally id.* Accordingly, in the absence of any mention from Plaintiff that he affirmatively attempted (or even intended) to grieve some of the conduct underlying this action, the Court is hard-pressed to assume that a reasonable inmate in his position would have been deterred from filing a grievance concerning these claims. *See McLendon v. Teodoro*, No. 21-CV-264, 2024 WL 2445804, at *5 (M.D. Ala. Apr. 22, 2024) ("Given that Plaintiff made no attempt to file a grievance regarding the claims currently before the Court, Plaintiff's allegations fail to establish that he was thwarted from taking part in the grievance process through machination, misrepresentation, or intimidation." (citing *Ross*, 578 U.S. at 644)),

---

[5] Plaintiff states that he "was personally approached by an unknown inmate and slapped and choked when [he] wrote a generalized grievance with no names about medication administering," and that the inmate warned him that "if [he] messed with Skinner[,] he would stab [Plaintiff's] 'grievance writing snitch ass' next time." Resp. at 3. But Plaintiff does not allege that this grievance concerned Skinner's (or anyone's) conduct at issue in this case, nor does he explain how any Defendant or jail official was involved in, or responsible for, the alleged threats made by the unidentified inmate.

He likewise asserts, in general terms, that Deputy Ramirez "already did punish [him] for a grievance without his name." *Id.* But Plaintiff does not specify whether this alleged punishment stemmed from a grievance related to the claims in this action or from a separate, unrelated grievance. The lack of detail makes it difficult for the Court to determine whether this allegation bears on Plaintiff's access to the grievance process with respect to the circumstances underlying this case.

*report and recommendation adopted*, 2024 WL 2401869 (M.D. Ala. May 22, 2024); *cf. Armstrong v. Woods*, No. 2:18-CV-161, 2021 WL 1035103, at *6 (M.D. Ala. Feb. 23, 2021) (finding that, because plaintiff did not allege that he *personally* requested a grievance form or that prison staff refused a *specific* request for one, he failed to establish the unavailability of administrative remedies); *Butler v. Butler*, No. 16-CV-36, 2018 WL 10704550, at *3 (M.D. Ga. Mar. 22, 2018) (providing that "[a] plaintiff must point to *specific facts* showing that he was actually deterred from filing a grievance and that the prison's actions would cause a reasonable inmate to be deterred" (emphasis added)).

Nevertheless, although the Court has serious reservations about whether Plaintiff's sparse allegations are sufficient to establish futility, the Court concludes that they are just enough to create a dispute in the record, and such allegations therefore require acceptance as true at *Turner*'s first step. *See, e.g.*, *Mobley v. Thrift*, No. 22-CV-57, 2024 WL 1265495, at *9 (S.D. Ga. Mar. 6, 2024) (considering, for purposes of resolving the futility of exhaustion, the plaintiff's allegations that "administrative remedies were unavailable for [his] harassment claims because he was experiencing threats and retaliation and feared additional retaliation if he pursued the grievance process"), *report and recommendation adopted*, 2024 WL 1258674 (S.D. Ga. Mar. 25, 2024); *see also Jackson v. Griffin*, 762 F. App'x 744, 746 (11th Cir. 2019) (holding that disputes about the availability of administrative remedies are questions of fact that can bar dismissal at *Turner*'s first step). Thus, because prisoners need not exhaust a grievance process where jail officials were "unable or consistently unwilling to provide any relief to aggrieved inmates," and where prisoners are otherwise thwarted from filing grievances "through machination, misrepresentation, or intimidation," *Geter*, 974 F.3d at 1355, dismissal at *Turner*'s first step would be inappropriate.

## II.    *Turner* Step Two

The Court resolves the exhaustion dispute at *Turner*'s second step based on the evidentiary record.  Although Plaintiff asserts that grievances were ignored, destroyed, or discouraged, the record of Plaintiff's own grievance activity does not support a finding that jail officials were "consistently unwilling" to process grievances or that the grievance process operated as a "dead end."  *Ross*, 578 U.S. at 643.  Moreover, Plaintiff's generalized assertions of intimidation, which are untethered to any attempt to grieve the conduct underlying this action, are insufficient to establish that he was "thwarted" from using the grievance process.  *Geter*, 974 F.3d at 1355.

As an initial matter, the record reflects that at all relevant times, the Palm Beach County Corrections Department maintained an inmate grievance system.  *See* MTD, Ex. B, Sergeant Angela Ward Affidavit ("Ward Aff."), [ECF No. 59-2] ¶¶ 2–3 ("At all relevant times, the Palm Beach County jail system (main jail and West Detention facility) had a Grievance Procedure. [ ] . . . The inmate grievance procedure is available to all inmates.  Inmates may file grievances to settle legitimate complaints concerning any incident, policy, and/or condition within the Palm Beach County jail system.").  The parties preliminarily dispute whether Plaintiff received a copy of the PBSO rules and procedures explaining how to utilize that grievance system.  The Court concludes that Defendants have submitted evidence through Sergeant Ward's sworn testimony and Plaintiff's housing records sufficient to establish that he did.  *See* Ward Aff. ¶ 5 ("On December 30, 2020, the Plaintiff received a copy of the Rules and Regulations explaining the grievance procedures."); *see also* MTD, Ex. C, Inmate Housing History, [ECF No. 59-3], at 1 (reflecting that Plaintiff received "a[n] inmate rule book" on December 30, 2020).

Nevertheless, Plaintiff insists that he "at no time ever received an inmate handbook."  Resp. at 3.  He challenges Defendants' proffered Inmate Housing History by asserting that Sergeant

Ward was "not present when she claims [he] received this handbook" and that the Inmate Housing History reflects a "wrong name" and an "edited time stamp" next to the entry documenting receipt of the handbook. *Id.* These challenges are unpersuasive. After all, Plaintiff argues that Sergeant Ward lacks personal knowledge because she was not "present" when the handbook was issued while simultaneously asserting that the issuance of said handbook never occurred. Further, he offers no legitimate basis to question the authenticity of the Inmate Housing History record. The "edited time stamps" to which Plaintiff refers appear to be routine "next review" entries that have been applied to multiple records in his housing history, so there is nothing about the inmate handbook entry's "next review" date that is suggestive of any alteration. *See* Inmate Housing History at 1–2. On this record, then, the Court concludes that Plaintiff received the PBSO's rules and guidelines setting forth the procedures governing his facility's grievance and appeal process.

This conclusion is reinforced by the undisputed fact that Plaintiff actually availed himself of the PBSO grievance system on multiple occasions. Plaintiff submitted seven grievances during his incarceration that, while touching on some subject matter related to the allegations in the Amended Complaint, do not clearly or directly address the conduct at issue here. *See* MTD, Ex. D., Pl. Grievances, [ECF No. 59-4], at 1–10. Plaintiff also pursued several administrative appeals, which reflects both his familiarity with the grievance process and his ability to navigate its procedural requirements. *See, e.g.*, *id.* at 6, 8.

The record likewise demonstrates that Plaintiff understood the importance of identifying staff members by name when submitting grievances. On more than one occasion, grievance officials instructed Plaintiff that the absence of staff names impeded proper review of his complaints. *See id.* at 1 ("Grievance Coordinator: 'You did not give a nurse's name. In the future, please obtain nurse's name so that any problem can be addressed.'"); *id.* at 6 ("In the future, please

identify the staff member you have the allegation against."). Plaintiff complied with this requirement by naming non-party staff members in other grievances. *See id.* at 3 (alleging "disparate treatment" by "Nurse Broous"); *id.* at 7 (alleging that "Deputy Muntene shouted 'Suboxone' 3 times," thereby disclosing Plaintiff's opioid use disorder to other inmates).

Notably, in an appeal Plaintiff filed on October 19, 2023, he stated that, "for [his] own safety [he] cannot say the staff member['s] name" because he had "been retaliated on by PBSO in the past." *Id.* at 6. This statement was made in response to a grievance coordinator's request that Plaintiff identify the staff member involved, and the underlying grievance itself does not concern any of the claims the Court permitted to proceed to service of process. *Compare id.* at 5–6, *with* Order Screening Am. Compl. at 3–10. Nevertheless, Plaintiff's appeal reflects that, even where he has asserted fear of reprisal associated with naming an officer, he was not deterred from pursuing the grievance or from articulating the substance of his complaint with as much specificity as he believed possible, short of identifying the staff member by name.

Despite Plaintiff's clear access to the grievance system and familiarity with its requirements, none of Plaintiff's grievances reference Deputy Ramirez's alleged retaliatory or deliberately indifferent conduct, nor do they mention Dr. Beauzile, Waits, or Skinner in connection with their alleged medical deliberate indifference that Plaintiff asserts in the instant action.[6] *See generally* Pl. Grievances. And it is worth noting that, although Plaintiff alleges that the purported retaliation(s) by Skinner and Ramirez occurred sometime between February 8, 2022, and October 23, 2023, *see* Am. Compl. at 10, Plaintiff filed four grievances during that same period and

---

[6] Plaintiff does not argue in his Response that any of the grievances identified by Defendants independently amounted to proper exhaustion, and the Court treats any such argument as abandoned. *See generally* Response.

submitted an additional three thereafter, reflecting his continued ability and desire to utilize the PBSO's grievance process.

From the outset, Plaintiff's pattern of grievance filings includes instances in which he expressed fear of reprisal yet continued to submit grievances with sufficient detail—and evinces his continued use of the grievance process during and after the alleged period of intimidation. Accordingly, this pattern undercuts Plaintiff's claim that administrative remedies were unavailable to him or that fear of retaliation wholly foreclosed access to his jail's grievance system.  *See Whatley II*, 898 F.3d at 1083 (approving district court's consideration of plaintiff's "history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him"); *Halpin v. Crist*, 405 F. App'x 403, 407 (11th Cir. 2010) ("To the extent that he argues that he was unable to file grievances for fear of retaliation, his argument is severely undermined by the record of multiple unrelated grievances he filed, both before and after the alleged incident giving rise to the fear of reprisal."); *accord Champ v. Lafayette*, No. 09-CV-424, 2011 WL 565648, at *3 (M.D. Fla. Feb. 8, 2011) ("Plaintiff's allegation that he was unable to file grievances in fear of retaliation is severely undermined by the record, which reflects that Plaintiff submitted multiple unrelated grievances and inmate requests after the alleged incident giving rise to the instant action." (citations omitted)).

As for Plaintiff's contention that he did not file grievances because staff frequently trashed them, this claim is unsupported by the record.  Plaintiff submitted a Declaration of another inmate, John Tabb, who swears that he has "watched deputies throw grievances in the trash after ripping them to peices [sic]."  Resp. at 4.  But Tabb's Declaration does not establish the unavailability of administrative remedies.  First, his assertion that deputies "throw grievances in the trash" is overly broad, as he fails to identify any of the Defendants, does not reference specific grievance attempts

by Plaintiff, and does not provide dates or details tying the alleged conduct to Plaintiff's claims. *Id.* Second, Defendants have submitted jail records indicating that Tabb was first incarcerated at the Palm Beach County Jail on August 8, 2025, which postdates the period relevant to Plaintiff's allegations, which ran from December 2020 through October 2024. *See* Reply, Ex. C, Section Manager Lynnette Sanchez Affidavit ("Sanchez Aff."), [ECF No. 66-3], ¶¶ 2–3. As a result, Tabb lacks personal knowledge of the grievance process during the timeframe at issue, and his declaration does not rebut Defendants' evidence of availability of administrative remedies.

The Court next addresses Plaintiff's assertions of individualized threats and intimidation, which present the closest question. "While it is a basic premise that inmates cannot be held to the exhaustion requirements if the remedies for grievances are not 'available,' such as when prison officials prevent them from exhausting, the plaintiff must have some supporting proof of his assertions." *Kingcade v. Parker*, 949 F. Supp. 2d 1232, 1239 (S.D. Fla. 2013) (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002)). As a threshold matter, and as the Court previously noted, Plaintiff identifies only alleged personal threats by Skinner and Ramirez and offers nothing—no sworn statements or evidence—suggesting that he was prevented from grieving claims against Dr. Beauzile or Waits. This omission, coupled with Plaintiff's documented history of filing multiple grievances related to his medical needs, is sufficient for the Court to conclude that Plaintiff has failed to demonstrate the futility of exhausting his administrative remedies as to Dr. Beauzile and Waits. Those claims therefore must be dismissed.

Plaintiff's claims that he was intimidated into not filing grievances against Skinner and Deputy Ramirez fare no better, though they warrant further discussion. The difficulty here, which animated the Court's analysis at *Turner*'s first step, is that the record is unclear as to when Plaintiff was dissuaded from filing grievances and whether he ever attempted to grieve issues related to the

specific claims asserted against Skinner and Ramirez in the Amended Complaint.  Even in the

Amended Complaint, Plaintiff is vague about when his claims accrued.  *See* Am. Compl. at 6, 10

(suggesting that his First Amendment retaliation claims against Skinner began "around [February

8, 2022]" and, as to Ramirez, sometime between February 8, 2022 and "October 23, 2023,"

including some instances in "June of 2022").  Plaintiff's Response does nothing to clarify this

timeline.  It provides no dates for the purportedly threatening conduct and no factual detail to

enable the Court to determine when Plaintiff might have been deterred from filing grievances.

This lack of specificity stands in contrast to at least one case in which a court found intimidation

sufficient to excuse exhaustion only after being presented with a detailed chronology of events.

*See, e.g.*, *Mobley*, 2024 WL 1265495, at \*9–11 (relying on plaintiff's account of specific dates and

conduct in his response to conclude that the grievance process was both "subjectively and

objectively" unavailable).  And it is ultimately Plaintiff's burden—not Defendants'—to excuse his

failure to exhaust.  *See Black*, 2024 WL 64291, at \*3.

      Plaintiff has had ample opportunity to develop the record but still fails to identify a specific

grievance he was prevented from filing.  And that omission is significant, because the record

reflects that Plaintiff in fact continued to file other grievances during the relevant period and was

not deterred from pursuing at least one appeal in which he himself even referenced the possibility

of retaliation.  He therefore has not shown a concrete instance in which he was actually intimidated

from filing a grievance—not generally, but related to this case.  *See Turner*, 541 F.3d at 1085

(explaining that threats render remedies unavailable only if "the threat *actually did deter* the

plaintiff inmate from lodging a grievance or pursuing a particular part of the process" (emphasis

added)); *Nolley v. Warden, Macon State Prison*, 820 F. App'x 845, 853 (11th Cir. 2020) (affirming

district court's finding that plaintiff failed to show he was prevented from filing grievances "given the many other grievances that he was able to file without issue").

To the extent Plaintiff contends that Skinner and Ramirez's conduct, serious as it may be, paralyzed him such that he could not file *any* grievance concerning them, the Court finds such self-serving allegations are insufficient to establish futility, standing alone. *See, e.g.*, *Badger v. Parsons*, No. CV-308-105, 2009 WL 2634073, at *4 n.5 (S.D. Ga. Aug. 26, 2009) (explaining that courts may demand evidence beyond a plaintiff's "self-serving statements" to show that officials "inhibited him from utilizing the grievance process" and concluding that such statements alone are insufficient to establish unavailability (citing *Kozuh v. Nichols*, 185 F. App'x 874, 876 (11th Cir. 2006))). The Court further agrees with Defendants that, absent concrete facts showing that Plaintiff was actually inhibited from filing a specific grievance during the relevant period, a "mere allegation" of threats generally would essentially "enable every inmate-plaintiff to overcome the PLRA's exhaustion bar." Reply at 4. There is no special exception to be made because Plaintiff is pursuing retaliation claims against these Defendants; indeed, the Eleventh Circuit has made clear that even inmates pursuing retaliation claims must exhaust administrative remedies. *See Gould v. Owens*, 383 F. App'x 863, 868 (11th Cir. 2010) (stating that, "to the extent [plaintiff]'s claims for retaliation might be cognizable under the First Amendment, he still had the obligation to pursue administrative remedies before filing this action" (citing *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998))).

Even if Plaintiff's assertions against Skinner and Ramirez, viewed in a vacuum, could plausibly cause a reasonable inmate to hesitate before filing a grievance against them, the Court concludes that Plaintiff's various inconsistent positions and the record evidence substantially undermine his credibility. "This Court may weigh the evidence and make credibility

determinations at [*Turner*'s] step two."  *Charoo v. Beckford*, No. 21-61659, 2023 WL 11897250, at *2 (S.D. Fla. Sept. 21, 2023); *see also Gholston v. Morales*, No. 20-CV-491, 2021 WL 6751607, at *4 (M.D. Ga. Dec. 14, 2021) ("At *Turner*'s second step of review, the Court may weigh the credibility of Plaintiff's allegations against other available evidence."), *report and recommendation adopted*, 2022 WL 264817 (M.D. Ga. Jan. 27, 2022).

First, Plaintiff alternately asserts that the PBSO grievance system is generally "dangerous" and routinely results in consequences for inmates, rendering it unavailable.  Resp. at 3.  But that claim is difficult to reconcile with his documented and repeated use of the grievance system, including at least seven grievances and multiple appeals.  *See Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 536 (11th Cir. 2014) (holding that plaintiff "provided no evidence to support his contention that FDOC personnel lost his appeal, other than his own testimony, which the district judge was entitled to find was outweighed by other record evidence").

Second, Plaintiff adopts a different position regarding exhaustion of his remedies in his Amended Complaint.  There, Plaintiff affirmatively alleges that he "file[d] many grievances," including grievances concerning the claims of "retaliation, deputy harassment, [and] cruel and unusual punishment" contained in his civil-rights complaint.  Am. Compl. at 16.  Although he suggests that aspects of the grievance process were futile, he does so only through generalized assertions that "grievances [are] never return[ed]," *id.* at 17, that "grievance staff [were] lying," *id.*, that grievances were returned "past expiration," *id.*, and that staff "mishandle[d]" grievances related to his complaint, *id.* at 16.  Notably, as to Skinner and Ramirez's conduct in particular, Plaintiff describes their actions only in relation to grievances he claims to have filed after the fact.  *See* Am. Compl. at 10.  He does not allege, despite being directly pressed on this point, that either Defendant prevented him beforehand from filing the "retaliation" or "deliberate indifference"

grievances he claims to have pursued—grievances that do not appear in the record and which Plaintiff himself has not produced.  *See generally id.*; Resp.

These internal inconsistencies substantially weaken Plaintiff's claims that he was thwarted or intimidated by Skinner and Ramirez before filing grievances; therefore, they are not entitled to much evidentiary weight, if any.  *See Molina-Rivera v. U.S. Att'y Gen.*, 723 F. App'x 913, 914–15 (11th Cir. 2018) (recognizing that credibility determinations may rest on "the internal consistency of the witness's own statements and the consistency of those statements with other evidence in the record"); *see also Brown v. Williams*, No. 20-24604, 2021 WL 2414100, at *7 (S.D. Fla. June 14, 2021) (finding inconsistent responses and "vague and conclusory statements" were insufficient to establish exhaustion).  Rather, in light of Plaintiff's continued grievance filings during and after the alleged retaliation window, his willingness to submit grievances without naming offenders, and the absence of evidence (beyond Plaintiff's self-serving assertions) that he was actually prevented from filing grievances specifically related to this case, the Court finds that Defendants' evidence more persuasively supports the conclusion that Plaintiff failed to exhaust available administrative remedies.  *See Kozuh*, 185 F. App'x at 878 (finding dismissal is proper when there is no evidence to support the inmate's claim that he was "thwarted" from bringing grievances or that the grievance process was unavailable where the inmate "was able to file numerous informal complaints").

## **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss, [ECF No. 59], is **GRANTED**.  Plaintiff's Amended Complaint, [ECF No. 7],

is **DISMISSED without prejudice**.[7]   All pending motions are **DENIED as moot**, and all deadlines, if any, are **TERMINATED**.  The Clerk of Court shall **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 26th day of February, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

CC:

Matthew John Lewis
0382088
West Detention Center
Inmate Mail/Parcels
P.O. Box 1450
Belle Glade, FL 33430
PRO SE

---

[7]  It would appear that only those claims that began accruing between December 31, 2010, and February 8, 2022, as well as any claims that began accruing between March 24, 2023, and February 26, 2024, would be barred by the statute of limitations, which would render the instant dismissal of those claims as effectively with prejudice.  *See* Am. Compl. at 9–10; *Williams v. Home Advantage Humana*, No. 23-CV-980, 2023 WL 4104520, at *1 (M.D. Fla. May 31, 2023) (recognizing that Florida's general negligence statute applies to claims brought pursuant to 42 U.S.C. § 1983 and recognizing that, "[e]ffective March 24, 2023, Fla. Stat. § 95.11, was amended to reduce the statute of limitations for negligence claims from four years down to only two years" (citing FLA. STAT. § 95.11(4)(a) (2023))); *see also Massengale v. Ford*, No. 5:17-CV-99, 2019 WL 728971, at *1 n.1 (M.D. Ga. Feb. 20, 2019) (noting that even if the dismissal for failure to exhaust was effectively with prejudice, dismissal was "nonetheless appropriate because the Plaintiff had ample opportunity to exhaust his administrative remedies before filing suit but failed to do so"); *accord Davis v. Rutledge State Prison*, No. 23-cv-130, 2024 WL 5660968, at *5 (M.D. Ga. June 4, 2024), *report and recommendation adopted*, 2024 WL 5662044 (M.D. Ga. July 25, 2024); *Grant v. Ward*, No. 22-cv-396, 2025 WL 1727966, at *10 (M.D. Ga. June 20, 2025), *report and recommendation adopted*, 2025 WL 2463618 (M.D. Ga. Aug. 27, 2025).